## SUPERMOLD CORPORATION OF AMERICA v. AMERICAN TIRE MACHINERY CO.

### No. Eq. 1409–RJ.

District Court, S. D. California, Central Division.

June 5, 1939.

Percy S. Webster of Stockton, Cal., for plaintiff.

Frank L. A. Graham, of Los Angeles, Cal., for defendant.

JENNEY, District Judge.

This is an action charging contributory infringement of two patents by the defendant. The first patent applied for was No. 1,928,404; the application for which was filed August 20, 1928, and patent was issued September 26, 1933. The other, No. 1,907,026, was applied for February 27, 1929, and was issued May 2, 1933. Therefore, even though patent No. 1,928,404 was issued subsequent to patent No. 1,907,026, it really antedates that patent.

Both patents relate to the method of retreading pneumatic tires through the use of full circle retreading apparatus. It was common practice in the art, prior to the application for these patents, to adjust the molds through the use of spacer-rings. The usual method of obtaining and maintaining pressure upon the tread portion of the tire to hold it against the matrices of the mold was through the use of an inner bag or tube, which was inflated with air at a pressure several times the normal pressure for road use. After the tire, with the unvulcanized rubber (the "camel back") attached was put in the mold and the inner bag inflated so as to furnish the pressure, heat was applied to the matrices to cause the new rubber to be vulcanized to the old carcass of the tire.

See patents as follows:

| | | | |
|---|---|---|---|
| Batcheller, | No. 1,113,925 | Exhibit | "C– 2" |
| Thompson, | No. 1,354,227 | " | "C– 3" |
| Hughes, | No. 1,524,866 | " | "C– 4" |
| Harris, | No. 1,353,042 | " | "C– 5" |
| Hudson, | No. 1,836,850 | " | "C– 6" |
| Burch, | No. 1,751,392 | " | "C– 7" |
| Smith et al., | No. 1,710,804 | " | "C– 9" |
| Glynn, | No. 1,760,944 | " | "C–10" |
| Gregg, | No. 1,643,493 | " | "C–14" |
| Smith et al., | No. 1,750,867 | " | "C–15" |
| Smith et al., | No. 1,662,035 | " | "C–16" |

All of the claims in suit are method claims. There appear to be no method patents in the prior art.

The court will first consider patent No. 1,928,404. Plaintiff is urging two of the ten claims of the patent, to-wit, Claims 8 and 9, which read as follows:

"8. That method of fitting a tire to a full circle retreading mold adapted to receive the tread portion of the tire comprising the step of moving the bead portions of the tire axially thereof until the tread properly fits the mold and then confining the beads against further movement.

"9. That method of fitting a tire of a certain tread diameter into a full circle retreading vulcanizing mold of a different tread diameter, comprising the step of

moving the bead portions of the tire axially and in opposite directions, whereby to vary the tread diameter of the tire until it equals that of the mold, and then confining the bead portions of the tire against further movement."

The application for this patent had a long and varied experience in the patent office. The claims in suit were rejected by the primary examiner on Hughes' Exhibit "C-4" and Gewert, No. 1,538,481. On appeal in the patent office the claims were finally allowed. The following patents pleaded by the defendant, as anticipatory disclosures, were not cited as references during the prosecution of the application before the patent office:

| | | |
|---|---|---|
| Batcheller, | Exhibit | "C-2" |
| Thompson, | " | "C-3" |
| Harris, | " | "C-5" |
| Hudson, | " | "C-6" |
| Burch, | " | "C-7" |
| Borman, | " | "C-8" |

This affects the presumption in favor of the validity of the patent from its issuance. Westinghouse Electric & Mfg. Co. v. Toledo, P. C. & L. Ry. Co., 6 Cir., 172 F. 371, at page 392.

The claims in issue were allowed by the Board of Appeals in the Patent Office on the theory that the prior art patents, Hughes and Gewert, did not disclose a process in which one step consisted of allowing the tire to spread in the plane of the rim beads. They ascribe the function of holding the beads in their fixed position to the inflation of the inner tube. Defendant's method is apparently dependent upon the inflated bag for the same function.

In the patent to Hughes, supra, there is disclosed a structure consisting of a perfect circle mold made in two principal parts. In use, the rim elements, which retain the beads in fixed position, may be moved, axially, relative to each other.

Thompson, Exhibit "C-3," discloses a structure which allows the operator to vary the spacing of the rim-flanges, axially, in relation to each other, restraining the beads against further outward movement. Hudson, Exhibit "C-6", discloses a similar structure.

All of the foregoing patents teach the correlative adjustment of the moveable parts for the purpose of obtaining a close fit between the tire and the mold. These prior patents are drawn to the particular apparatus disclosed, but these structures in the hands of a skilled operator would lead to their use in the manner claimed as a method in the claims in issue.

Counsel for plaintiff has emphasized what he describes as a "push" or "lever" action, exerted by the outward axial movement of the beads. It seems to the court that this is an illusory concept. Manifestly the force exerted through the beads and side walls of the tire is negligible compared with that of the air pressure, applied to place and hold the tread portion of the tire in the matrices of the mold. This action would occur in the use of many of the prior structures.

The court can reach no other conclusion than that claims 8 and 9 are invalid, by reason of lack of invention over the prior art. If possible, the claims would be narrowed to avoid invalidity. McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800. However, the claims are drawn in such broad terms and are so unqualified that this is impossible, and the claims must stand or fall as made.

Considering now Patent No. 1,907,026: This patent has but one claim which reads as follows: "That method of fitting a tire to an adjustable tire mold consisting in the steps of first determining the actual outside peripheral measurement of the tire, placing the tire in the mold, and then adjusting the mold so that the interior peripheral measurement thereof is the same as that determined as the actual outside peripheral measurement of the tire, whereby when the tire is inflated under pressure within the mold it will be incapable of either stretching or buckling therein."

A perusal of the file wrapper, Exhibit "B", discloses that the applicant started out with a total of six claims, all method claims, which were rejected by the examiner, as failing to relate to a method capable of patenting and as being a series of steps relating to calculations which did not relate to a true method. (Exhibit "B", p. 16.) The examiner made reference to the following patents: Coats No. 1,333,062, Hughes No. 1,524,866—Exhibit "C-4"; Smith et al., No. 1,662,035—Exhibit "C-16".

The applicant amended his claims and asked for a reconsideration. The examiner again rejected the claims for the same reasons and in so doing stated: "The applicant's method is not any different than the obvious method that would be followed in using any full circle mold, either of the

applicant's type, Hughes' type, or Coats' type. In the use of each type, a skilled operator will adjust the mold to approximately the size of the tire to be retreaded. The calculations necessary to make such an adjustment, so as to properly use the full circle mold, do not relate to a method in a patentable sense." (Defendant's Exhibit "B", p. 19.)

The applicant again amended his claims and added thereto two more method claims and again requested a reconsideration of the case. The examiner again rejected all the claims and added as additional references the following patents: Smith et al., No. 1,750,867—Exhibit "C–15"; Woock, No. 1,764,378—Exhibit "C–1".

The applicant then eliminated all of the claims and submitted one new claim which was finally allowed by the examiner and constitutes the single claim of the patent. (Exhibit "B", pp. 24–27.)

At the time the applicant submitted the single new claim, which is the claim in the patent, he stated: "The new claim has now been drawn to define specifically the steps of applicant's method, the novelty consisting in the step of first accurately determining the actual rather than the theoretical outside peripheral measurement of the tire and then adjusting the tire mold to fit this actual size." (Exhibit "B", p. 26.)

However, after the allowance, the applicant again requested that an amendment be allowed to the claim, stating that the limitation that the tire was placed in the mold prior to the adjusting of the mold might permit infringers to avoid the terms of the claim by first adjusting the mold and then putting the tire into it. This proposed amendment was disallowed by the examiner who stated that it would make the proposed claim too broad, and would omit an essential step in the retreading of a tire and the proposed claim would be incomplete.

In the light of the file wrapper and a study of the patents referred to therein by the examiner, which were introduced in evidence at the trial, as well as the additional patents introduced by the defendant, it would appear that the claim must be narrowly interpreted if it is to be held valid.

A careful reading of the specifications and the claim disclose that the only adjustment provided is the adjustment of the pressure plates. The insertion of the spacer ring between the matrices would be an adjustment of the mold, but it is evident that this adjustment is old in the art. See Hughes, Exhibit "C–4" (patented 2-3-25); Gregg, Exhibit "C–14" (patented 9-27-27).

If the adjustment is considered as the adjustment of the pressure plates at any time, the patent would be invalid as anticipated by Smith, No. 1,662,035, Exhibit "C–16"—(patented 3-6-28).

It therefore seems that the claim of the patent must, under any circumstances, be narrowly interpreted to cover, as stated by the applicant at the time of the application for the patent, "specifically the steps of applicant's method," i. e.: First. Determining the actual outside peripheral measurement of the tire; second, placing the tire in the mold; third, and then adjusting the mold so that the interior peripheral measurement thereof is the same (within the very narrow tolerance of the order of sixteenths of an inch) as that determined as the actual outside peripheral measurement of the tire.

■ If given the scope claimed by plaintiff, on the issue of infringement, the claim would be invalid in view of several prior art patents showing structures, in the operation of which a skilled person would use a method to accomplish the same result, in the same manner, as the prior art teaches.

■ If narrowly interpreted to cover the three steps set forth above, in the order indicated, the court finds that the patent is not infringed by the defendant. The chart mentioned in this patent is not a part thereof. Calculations alone are not patentable. Defendant does not adjust the pressure plates, or recommend to users of its method the adjustment of pressure plates. The only thing that the defendant uses, or the use of which it recommends, is the chart setting forth its calculations; hence defendant does not infringe this patent or contribute to the infringement thereof in that respect.

Whether or no, giving this patent such a narrow interpretation renders the same invalid, as merely covering the function of the machine disclosed in Woock—Exhibit "C–1"—need not be determined; counsel for both parties having stipulated that the court need not pass upon this question, having found non-infringement.

Judgment for defendant. Defendant will prepare findings of fact and conclu-

388

sions of law within fifteen days. Within ten days thereafter counsel for plaintiff will file objections, if any.

It is so ordered.